**FRANK A. WEISER**, State Bar No. 89780
Attorney at Law
3460 Wilshire Blvd., Suite 1212
Los Angeles, California 90010
Telephone: (213) 384-6964
Facsimile: (213) 383-7368
E-Mail: maimons@aol.com

Attorneys for Defendant
BALUBHAI GOPAL PATEL
individually and as trustee of the,
BALUBHAI PATEL REVOCABLE
TRUST DATED MARCH 14, 2007

# UNITED STATES DISTRICT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN JOHN PERRI, an individual, | **Case No.: 2:20-cv-05782-JFW-GJS** |
| | Hon. Judge John F. Walter |
| Plaintiffs, | Courtroom 7A |
| | **RESPONSE TO ORDER TO SHOW CAUSE RE: SANCTIONS; DECLARATION OF FRANK A. WEISER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v | |
| BALUBHAI GOPAL PATEL, individually and as trustee of the BALUBHAI PATEL REVOCABLE TRUST DATED MARCH 14, 2007; DOES 1-10 Inclusive, | |
| Defendants. | |

1

## DECLARATION OF FRANK A. WEISER

I, FRANK A. WEISER, do hereby declare:

1.  I am the attorney for the Defendant BALUBHAI GOPAL PATEL, individually and as trustee of the BALUBHAI PATEL REVOCABLE TRUST DATED MARCH 14, 2007 ("Defendant") and I make this declaration in response to the Court's Order to Show Cause Re; Sanctions dated April 6, 2021 ("OSC"). (Civil Docket No. 25).

2.  On April 7, 2021, at approximately 1:24 p.m., the Plaintiff CARMEN JOH|N PERRI ("Plaintiff") filed a Notice of Settlement between the Plaintiff and the Defendant. (Civil Docket No. 26).

3.  On April 6, 2021, at approximately 7:38 a.m., I filed a Response to Plaintiff's Notice of Inability to Schedule Private Mediation; Declaration of Frank A. Weiser; Memorandum of Points and Authorities in Support Thereof. ("Response") (Civil Docket No. 24).

4.  I request that the Court take judicial notice and the contents contained i Notice of Settlement, and the Response.

5.  For the Court's convenience, I will reiterate what I stated in my declaration dated April 6, 2021, in support of the Response.

6.  Curiously, the Notice of Inability to Schedule Private Mediation filed by t the Plaintiff's attorney, Joseph Manning, was not filed as a declaration.

7.  I cannot recall **one** conversation that I have had with Mr. Manning regarding this case.

8.  To the best of my recollection, my conversations have been with his associate Phyl Grace, Esq., on this and other ADA cases that I am defending.

9.  I believe that, as I stated in my declaration in support of the Response, that I have spoken to her regarding potential settlement in this case and other cases she is handling more than than three times.

10. In my declaration in support of the Response, I stated that no agreement had yet been reached to date in this case (Declaration of Frank A. Weiser, page 2:18-19), but late yesterday afternoon at approximately 4:31 p.m., Ms. Grace and I had a further conversation regarding settling the case and the case was settled as indicated in the Notice of Settlement.

12. Mr. Manning's Notice of Inability to Schedule Private Mediation states vaguely that I have responded to the attempts to contact me "about" three times. (Notice of Inability to Schedule Private Mediation, pg. 2:5).

13. What I would add to paragraph 11 which I did not state in my declaration in support of the Response is that I object to this statement by Mr. Manning as it is not made under declaration as is his Notice of Inability to Schedule Private Mediation and without supporting evidence.

14. I have nothing personal against Mr. Manning or Ms. Grace and as I stated above at paragraph 8, I have had conversations with Ms. Grace on this and other ADA cases that I am defending.

15. I believe that I have also worked cooperatively with Mr. Manning in other ADA cases that I have defended in the past with his office such as, for example, stipulating to allow him to file an amended complaint without the necessity of a motion, in our filings of our Joint Rule 26(f) Reports, and also in this case, with our filing of the Joint Stipulation to Set Aside Default against the Defendant that was filed on September 30, 2020. (Civil Docket No. 15).

16. To the best of my recollection, the Joint Stipulation to Set Aside Default was filed after Ms. Grace and I spoke and she agreed on behalf of Mr. Manning to do so.

17. But as I stated in my declaration in support of the Response, I believe that the failure to complete mediation by the Court ordered date of April 5, 2021 was not solely my fault. (Declaration of Frank A. Weiser, page 3:4).

18.  I do not recall during my conversations with Ms. Grace, or in her e-mail correspondence with me, one conversation or e-mail where she proposed the name of a private mediator or a time and date to schedule the mediation.

19.  As I stated in my declaration in support of the Response, if I have overlooked such an e-mail I would ask that Ms. Grace as to which private mediator, time and date she proposed. (Declaration of Frank A. Weiser, page 3:1-2).

20.  Nevertheless, as I stated in my declaration in support of the Response, I have tried to cooperate with Ms. Grace in discussing and attempting to reach settlement in this case as in other cases that her firm is litigating with me. (Declaration of Frank A. Weiser, page 3:5-6).

21.  I would add what I did not state in my declaration in support of the Response, that Ms. Grace has been gracious and cooperative with me in both settling and attempting to settle both this case and other ADA cases that her firm is litigating with me.

22.  As I stated in my declaration in support of the Response, on February 9, 2021, Ms. Grace and I had a discussion late in the day about another ADA case filed by her firm in this Central District entitled Suzanne Na Pier v Tacos Baja, et al., v Tacos Baja, et al., USDC Case No. CV20-01627-CJC-KES ("Tacos Baja Case").

23.  On February 9, 2021, at approximately 5:07 p.m., Ms. Grace sent me an e-mail confirming settlement in the case which is attached hereto as Exhibit "A". As I did in my declaration in support of the Response, I have redacted the terms of the settlement in the e-mail due to its confidential nature.

24.  Subsequently, as I stated in my declaration in support of the Response, Mr. Manning's firm has yet to file a Notice of Settlement in the Tacos Baja Case (Declaration of Frank A. Weiser, page 3:15). but as I understand it both such a notice and a dismissal will be forthcoming.

25.  As I stated in my declaration in support of the Response, in another case entitled James Rutherford v Ekta Hospitality LLC, USDC Case No. CV20-00408-

1   JGB-SHK, Ms. Grace and I settled the case and the parties were able to complete
2   mediation. Mr. Manning's firm filed a Notice of Settlement in the case on March 23,
3   2021. (Civil Docket No. 22 in Ekta Hospitality LLC case). (Declaration of Frank A.
4   Weiser, page 3:16-20).

5       26.   As I stated in my declaration in support of the Response, in the Tacos Baja
6   case and the Ekta Hospitality LLC case as in other cases, Ms. Grace and I have also
7   discussed this case. (Declaration of Frank A. Weiser, page 3:22-23).

8       27.   Further, as I stated in my declaration in support of the Response, I have had
9   medical problems and family medical issues primarily with my daughter related to the
10  removal of a large kidney stone that has caused a serious backlog in my heavy trial and
11  appellate calendar and contributed in my not completing mediation by the date of April
12  5, 2021.

13      28.   My daughter still requires surgery to remove her kidney stone as her
14  previously scheduled surgery was postponed due to the pandemic, and she has been
15  treated by a urologist Aresh Akhavein, M.D. formerly of Comprehensive Urology
16  located at 8631 W. 3rd St., #715E, L.A., CA 90048.

17      29.   During the first quarantine my daughter developed severe pain and nausea
18  from development of new kidney stones aside from the one that had been scheduled
19  for surgery.

20      30.   This required calling 911 to come to our house at the time and seeing and
21  taking a CT scan later in the day; and my wife had her take additional tests to determine
22  with Dr. Akhavein at that time as to the next course of action.

23      31.   As I stated in my declaration in support of the Response, there are other
24  medical issues related to my daughter who also suffers from a severe case of OCD and
25  issues have arisen with regards to to her medication that she takes for the condition that
26  required another personal physician of our family, Dr. Michael Farzam of House Call
27  Doctor, (310) 849-7991 to take medical tests of her at the end of August 2020.

28

32.  More recently, during the week of December 7th, 2020, my daughter began suffering pain and nausea again, which appears to be from the stone and which required calling Dr. Farzam and the doctor on call at Comprehensive Urology, Dr. Evan Rosen.

33.  On February 27, 2021, my daughter 2021, my daughter appears to have had a severe anxiety attack as she began complaining of a change in her sense of smell and was in fear that she had contracted Covid 19.

34.  Because of my daughter's severe OCD she has a great fear of contracting Covid 19 and she has not gone out of our house, except at rare times in our backyard, since approximately February of 2020.

35.  Dr. Farzam sent an assistant to our house on the evening of February 27, 2020, at approximately 9:30 p.m. to conduct a Covid test on my daughter.

36.  The results of the test thankfully were that my daughter had not contracted Covid.

37.  In addition to the above, a close family friend, Mr. Isaac Fuchs, passed away from a heart condition at Cedars-Sinai Medical Center on March 12, 2021.

38.  As I stated in my declaration in support of the Response, our friend's passing has had a terrible impact on my wife Susan Weiser and myself, and quite frankly, I have not been feeling well at times since his passing.

39. Further, and what I did not state in my declaration in support of the Response, I lost a brother-in-law in April of last year from Covid 19, Rabbi Solomon Koenig, and my wife's cousin, Rabbi Yonason Goldberger from other health reasons, who were prominent Rabbis in Brooklyn, New York, and I believe that it is fair to say that my family, just as many other families in the country, have undergone severe stress and depression in the past year due to the pandemic, and my family members  passing, and with my daughter's medical issues and now my dear friend's passing I have been, quite frankly, deeply affected and it has had a consequence in my work and backlog.

40. As I stated in my declaration in support of the Response, I am a sole practitioner, and as a result of the above, and also given the fact that I have not been working on a regular basis due to the pandemic, I am very backlogged at present in my heavy trial and appellate calendar and this contributed to my not completing the mediation by the Court's due date.

41. Further, as I stated in my declaration in support of the Response, I was closed from sundown Friday, March 26, 2021, until Tuesday, March 30, 2021, in observance of the Jewish Shabbat and the first two days of Passover which began on the evening of March 27, 2021 and ended on the evening of March 29, 2021.

42. On April 2, 2021, at approximately 3:46 p.m, I spoke to Richard Avalos, Esq., who I understand is an associate working in Mr. Manning's office.

43. Mr. Avalos informed me that the parties had not completed mediation which was to be completed by April 5, 2021 and he requested that I call Ms. Grace to further discuss the matter.

44. On April 2, 2021, at approximately 3:52 p.m., I e-mailed Ms. Grace and left her a voice mail message at 4:00 p.m. to call me back. A copy of the e-mail that I sent Ms. Grace on April 2, 2021, and the e-mail chain between Ms. Grace and myself from December 1, 2020 to such date is attached hereto as Exhibit "B". However, as I stated in my declaration in support of the Response, I do not believe that the e-mails that Ms. Grace has authored in this case necessarily reflects all the conversations that we had on the case because as I previously stated I have discussed this case along with other ADA cases in my discussions with her in the settlement discussions in the Tacos Baja case and the Ekta Hospitality LLC case.

45. As I stated in my declaration in support of the Response, Ms. Grace and I spoke regarding the case at approximately 4:44 p.m. the same day and as to a potential settlement. I also suggested that as we had not completed mediation that we submit a joint stipulation to continue the mediation completion date.

46.   On April 2, 2021, at approximately 4:59 p.m., I received an e-mail from Ms. Grace which is attached as Exhibit "C," with a photo of the previously discussed issue that day of the sloped disabled parking but no response as to submitting the joint stipulation.

47.   I did not hear from Ms. Grace on April 5, 2021, rather Mr. Manning filed the Notice of Inability to Schedule Private Mediation.

48.   I respectfully believe that I have been cooperative in my discussions with Ms. Grace that has now led to the case settling and while it is true we did not conclude a private mediation with a third party private mediator, as will be argued in the accompanying points and authorities, I believe that Ms. Grace and I in engaging in settlement discussions on behalf of our clients prior to the mediation completion date that has now led to a settlement have not violated the Court's Order, and that good cause, or at least excusable neglect under the Federal Rules favors discharge of the Court's OSC.

49.   I take my obligations seriously, and I have practiced extensively before district courts here in California and in this district and before the Ninth Circuit for approximately thirty years primarily specializing in civil rights cases on behalf of Asian-Indian motel owners and operators.

50.   Some of my published cases are City of Los Angeles v Patel, 409 U.S. 576 (2015) where I was counsel of record in a case that the United States Supreme Court affirmed in a 5-4 decision the Ninth Circuit's en banc decision facially invalidating on Fourth Amendment grounds a motel search ordinance that authorized law enforcement to search motel registers in demand without consent or a warrant. See also Patel v City of Los Angeles, 738 F.3d 1058 (9th Cir. 2013) (en banc); Herrera v City of Palmdale, 918 F.3d 1037 (9th Cir. 2019) (holding that plaintiffs' Fourth

Amendment claim was an exception to the Younger abstention doctrine); <u>Patel v City of Montclair</u>, 798 F.3d 1134 (9th Cir. 2015) (holding that the "common law trespassory doctrine of  the Fourth Amendment does not apply  to the common public areas of a motel and reaffirming that the private locked areas are entitled to Fourth Amendment protection); <u>Patel v City of San Bernardino</u>, 310 F.3d 1134 (9th Cir. 2002) (holding that plaintiffs case should not have been dismissed under Tax Injunction Act); <u>Patel v Penman</u>, 103 F.3d 868 (9th Cir. 1996)  (reversing jury verdict based on plaintiff's procedural due process claim<u>); City of San Bernardino Hotel/Motel Association v City of San Bernardino</u>, 59 Cal.App.4[th] 237 (1997) (facially invalidating a city tax on due process grounds)

51. I was placed in the Congressional Record by the late Congressman and Lieutenant Governor Mervyn Dymally on April 11, 1989 for my civil rights work on Behalf of the Asian-Indian motel community, and I have received official resolutions from the City of Los Angeles, County of Los Angeles, California State Assembly and State Senate for such work.

52. The Los Angeles daily Journal listed me in the top 100 attorneys in California for the <u>City of Los Angeles v Patel</u>, and the case was discussed in  a Wall Street editorial on January 11, 2019 and in a Forbes Magazine article that same month as a district court in New York relied on the case in issuing a preliminary injunction against the City of New York in favor of AIRBNB.

53. While I certainly lose my share of cases and I recognize that there are

better attorneys who practice in this district and in the Ninth Circuit, I certainly

take my obligations seriously.

54. Recently, I litigated a facial challenge in the Ninth Circuit to a City of San

Jose rent registry on Fourth Amendment grounds and the Ninth Circuit in a per curiam

opinion affirmed the district court's Rule 12(b)(6) dismissal but I believe

that there is a novel Fourth Amendment issue that requires that my clients file a cert

petition to the U.S. Supreme Court. See Hotop v City of San Jose, 982 F.3d 710

(9th Cir. 2020).

55. I respectfully request based on that the named defendants not be dismissed

based on the accompanying points and authorities and that the the OSC be discharged.

I declare under penalty of perjury under the laws of the State of California that

the foregoing is true and correct.

Executed this 7th day of April, 2021 at Los Angeles, California.


_____
FRANK A. WEISER

# I.

## MEMORANDUM OF POINTS AND AUTHORITIES

A. **GOOD CAUSE OR EXUCASBLE NEGLECT EXISTS TO DISCHARGE THE OSC**

Under Federal Rule of Civil Procedure 6(b)(1)(B), the Court has the power to extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect."

This rule, like all the Federal Rules of Civil Procedure "is to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." Rodgers v Watt, 722 F.2d 1257, 1263 (9th Cir. 1983). See also Federal Rule of Civil Procedure 1 ("[The Federal Rules] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.").

The circumstances concerning the settlement discussions between the parties before the Court ordered private mediation completion date that shortly therafter led to a settlement case clearly demonstrate the "good cause" required by Rule 6(b)(1) to deem the Court's Order to have not been violated. "Good cause" is a non-rigorous standard that has been construed broadly across procedural and statutory contexts. See Ahanchian v Xenon Pictures, Inc., 624 F.3d 1253, 1259 (9th Cir. 2010) (citing out of circuit cases for the same proposition).

To determine whether a party's failure to meet a deadline constitutes "excusable neglect", a district court must engage in a four-factor equitable test, which Includes analyzing: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. Pioneer Inv. Servs. Co. v Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395 (1993); Briones v Riviera Hotel & Casino, 116 F.3d 379, 381 (9th Cir. 1997) (adopting the test in Rule 60(b) motions); Bateman v U.S. Postal Serv., 231 F.3d 1220, 1223-1224 (9th Cir. 2000); Pincay v Andrews, 389 F.3d 853, 860

1  (9th Cir. 2004) (en banc) (clarifying that in application of the test a district may not apply
2  per se rules).

3      In Bateman, Bateman's counsel had left the country before filing an opposition
4  to a motion for summary judgment, and the deadline passed while he was traveling
5  abroad. Id., at 1223. Bateman's counsel also failed to file any motions for extensions
6  of time, and failed to contact the district court for sixteen days after he returned because
7  of "jet lag and the time it took to sort the mail." Id., at 1223.

8      Bateman moved to set aside the summary judgment pursuant to Rule 60(b).
9  Id., at 1223. The district court denied the motion after only considering the facts
10 concerning the reasons for the delay. Id., at 1224. The Ninth Circuit reversed and
11 remanded the case to the district court with instructions to grant the motion "because
12 the equities in this case weigh in favor of Bateman . . ." Id., at 1225.

13     In doing so, the Ninth Circuit emphasized Pioneer's "statement that "excusable
14 neglect includes cases of negligence . . ." Id., at 1224. In reversing, the Ninth Circuit
15 held that although Bateman's reasons for the delay was weak, "[t]he length of delay,
16 and its potential impact on the judicial proceedings, was also minimal." Id., at 1225.

17     The Ninth Circuit rejected that a two week delay in responding to the motion
18 was sufficient to justify denial of relief. Id., at 1225. (citing out of circuit authority
19 that "the mere possibility of prejudice from delay, which is inherent in every case, is
20 insufficient to require denial of a 60(b)(1) motion) (internal citations omitted).

21     In the case at bar, there is no known prejudice to the Plaintiff as the case has
22 now settled, two days after the Order's completion date. Even if this was not what the
23 Court contemplated originally, as demonstrated by Bateman, the fact that a third party
24 mediator was not used does not demonstrate prejudice, and the reasons, unlike Bateman,
25 are especially strong.

26     In Pincay, the defendants who had filed their notice of appeal 24 days late,
27 argued that the late filing was a result of a calendaring error caused by the attorneys and
28 Paralegals misapplying a clear legal rule. Id., at 855. Sitting en banc, the Ninth Circuit

rejected the plaintiffs' argument that the district court had abused its discretion in ruling for the defendants. The Ninth Circuit concluded that even though the calendaring error was not a "compelling excuse," because of the nature of the <u>Pioneer/Briones</u> balancing test any "rigid legal rule against late filings attributable to any particular type of negligence." Id., at 860.

In this case, the <u>Pioneer/Briones</u> factors weigh heavily that excusable neglect exists. As argued earlier, (1) there is no danger of prejudice to the defendants; (2) the length of the delay is minimal and there is no potential impact on the proceedings in general; (3) the reason for the delay under the circumstances of the Defendant's counsel's family medical issues, his counsel acted in good faith.

Further, by the parties counsel engaging in settlement discussions that has led to a settlement, in one sense the parties can be considered for purposes of this OSC to have engaged in a private mediation although not with a third party mediator.

The Ninth Circuit has held that a "private" mediation can be governed by the parties to the litigation agreement and are "not subject to the . . . ADR Local Rules" . See <u>Facebook, Inc. v Pacific Northwest Software</u>, 640 F.3d 1034, 1041-43 (9th Cir. 2011).

Given the liberal "good cause" and "excusable neglect" standard, there is ample reason to discharge the OSC under this and the Ninth Circuit's standard.

## B. EVEN IF NO GOOD CAUSE OR EXCUSABLE NEGLECT EXISTS THE COURT SHOULD NOT IMPOSE SANCTIONS

Under <u>Ghazali v Moran</u>, 46 F.3d 52 (9th Cir. 1995), a district court is required to weigh several factors before dismissing a case for failure to follow its order: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition on the merits; and (5) the availability of less drastic sanctions. Id., at 53 (internal citations omitted).

These factors weigh heavily in favor of not imposing sanctions. As argued earlier in Section A., (1) there is no danger of prejudice to the Plaintiff as the case has settled; (2) the public policy favoring disposition on the merits weighs in favor of the Defendant; (3) there are less drastic sanctions than striking the Answer that the Court could impose such as monetary sanctions, although respectfully as previously argued, Defendant requests that no such sanctions be imposed.

Further, striking an Answer is a harsh penalty and the Ninth Circuit has held that "it is to be imposed only in extreme circumstances." Henderson v Duncan. 779 F.2d 1421, 1423  (9th Cir. 1986).

In Henderson, the plaintiff's counsel "disregarded repeatedly the deadlines set by the district court." Id., at 1424. The Ninth held that while "[t]he district court need not exhaust every sanction before finally dismissing a case, [it] must explore possible and meaningful alternatives."  Id., at 1424. In Henderson, the district court "first tried to warn counsel of the consequences of his continuing dilatory preparation," and that "these warnings were crystal clear." Id., at 1424. Henderson's counsel was given at "least three initial warnings of possible dismissal, [and] the court attempted to solve the problem by holding a status conference and establishing a schedule for discovery and preparation of the Rule 42(c) order." ."  Id., at 1424.

In this case, even if, in arguendo,  there was an error by the Defendant's counsel, there was certainly no intentional flouting of the Court's Order. The Court could impose less drastic sanctions in order to remedy a violation of its order.

The other two Ghazali factors favor Plaintiffs. The public's interest in expeditious resolution of litigation was not violated by a two day delay in settling the case, especially in light of the Defendant's counsel's family medical issues and the passing of his close family friend. And the court's need to manage its docket while certainly required was not violated given the settlement two days later.

1
2
3

**II.**

4

<u>**CONCLUSION**</u>

5   For all foregoing reasons, the Defendant respectfully requests that the OSC be
6   discharged.

7
8   DATED:  April 7, 2021                    Respectfully submitted,
9
10                                           LAW OFFICES OF FRANK WEISER
11
12                                           By:___/s/ Frank A. Weiser_____
13                                           Frank Weiser
                                             Attorney for Defendant
                                             BALUBHAI GOPAL PATEL
14                                           individually and as trustee of the,
                                             BALUBHAI PATEL REVOCABLE
15                                           TRUST DATED MARCH 14, 2007
16
17
18
19
20   .
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28